UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ESPINOZA,<br><br>        Plaintiff,<br><br>    v.<br><br>TAMMY FOSS,<br><br>        Defendant. | Case No. 19-cv-04693-VC<br><br>**ORDER DENYING HABEAS PETITION**<br><br>Re: Dkt. No. 1 |

Espinoza's habeas petition is denied.

1. The only way the trial court's decision to admit gang expert testimony could be deemed a due process violation is if there were "*no* permissible inferences the jury may draw" from the testimony and it was "'of such quality as necessarily prevents a fair trial.'" *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)). In this case—more so than most cases where gang expert testimony is admitted at trial—the evidence was probative. Aside from the gang expert testimony, the government introduced other evidence relating to the shooter's motive and identity—the prior relationship between Martinez and Espinoza, their conversation outside the convenience store, the fact that mere minutes passed between the fight and the shooting, and the shooter emerging from the apartment complex across the street. The gang expert's testimony bolstered this evidence. His testimony that gang members may retaliate on each other's behalf to preserve the gang's standing in the community provided the jury with a reason to identify Espinoza, rather than Martinez or some other person from the apartment complex, as the shooter. So the California Court of Appeal's decision to reject the due process claim relating to the gang expert

testimony was not objectively unreasonable.[1]

2. Espinoza also contends that his due process and confrontation rights were violated in connection with Martinez's refusal to testify. Martinez invoked the privilege against self-incrimination in front of the jury. His invocation was illegitimate, because the government had offered him immunity. Before holding him in contempt, the trial court permitted the prosecutor to ask him a few substantive questions, including whether he had told Espinoza to kill Pimental. The trial court ultimately struck Martinez's testimony, told the jury not to consider it, and gave a limiting instruction that counsel's questions were not evidence. During closing arguments, on rebuttal, the prosecutor urged the jury to consider why Martinez refused to testify and who he was protecting.

Espinoza's case lies somewhere between two Supreme Court decisions—one finding a constitutional violation and the other not. In *Douglas v. State of Alabama*, the Court found that the defendant's confrontation rights were violated when the prosecutor read the entirety of a witness's signed confession implicating the defendant to the jury, in the form of questions to the witness who repeatedly refused to testify. 380 U.S. 415, 416–17 (1965). By contrast, in *Frazier v. Cupp*, 394 U.S. 731 (1969), the Supreme Court did not find a constitutional violation when the prosecutor previewed a witness's testimony in his opening statement and the witness subsequently invoked his Fifth Amendment privilege and refused to testify in front of the jury. *Id.* at 733–34. The trial court's limiting instruction—that the opening statement was not evidence—and the relatively limited probative value of the witness's potential testimony were enough to alleviate any constitutional concerns. *Id.* at 735–36.

The conduct of the trial court and the prosecutor in this case are more troubling from a constitutional standpoint than the events in *Frazier*. The prosecutor asked Martinez substantive questions in front of the jury that he likely should not have been allowed to ask. But the trial

---

[1] Although the decision to admit the YouTube videos of Espinoza rapping is head-scratching, it was not prejudicial in light of the other evidence presented against him at trial (including but not limited to the gang expert testimony).

court also took actions that were more protective than the limiting instructions in *Frazier*. And although the trial court allowed the prosecutor to make a limited argument at closing about Martinez's refusal to testify, that decision was not unreasonable. Under these circumstances, it arguably would have been unfair to the prosecution to prevent the jury from drawing reasonable inferences from Martinez's improper refusal to testify.

Although Espinoza's trial was somewhat more troubling than *Frazier*'s, it was far less constitutionally troubling than *Douglas*'s. Asking a few substantive questions of a witness who improperly invoked the Fifth Amendment privilege is nothing like reading a signed confession implicating the defendant under the guise of asking questions to a witness who refuses to testify. Overall, on habeas review, the Court cannot say that it was an unreasonable application of or contrary to clearly established Supreme Court precedent for the California Court of Appeal to reject this claim.[2]

\* \* \* \*

A certificate of appealability will issue only on the issues discussed in Section 2 of this ruling, because only for those issues would reasonable jurists "find the district court's assessment of the constitutional claims debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

Dated: March 1, 2022

VINCE CHHABRIA
United States District Judge

---

[2] At the hearing, Espinoza identified *County Court of Ulster County v. Allen*, 442 U.S. 140 (1979), *Darden v. Wainwright*, 477 U.S. 168 (1986), and *Namet v. United States*, 373 U.S. 179 (1963), as his strongest cases to overcome the AEDPA bar. But *County Court* and *Darden* are far too general to make it "obvious that a clearly established rule applies" in this case. *White v. Woodall*, 572 U.S. 415, 427 (2014). And *Namet* is not a constitutional precedent; it addresses non-constitutional evidentiary violations, which are not cognizable in federal habeas. 373 U.S. at 185; *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).